# EXHIBIT A

KeyCite Yellow Flag - Negative Treatment
On Reconsideration in Part Berryman v. Freed, E.D.Mich., June 3, 2015

2015 WL 2250985
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Phillip BERRYMAN, Charles
Starling, and Daniel Mora, Plaintiffs,
v.
Scott FREED, R. Vittitow, L. Elkins,
Exelby, N. Culberson, Kedron, Fay
Taylor, Fred Funston, Reszke, Adriane
Neff, and Ruhl–Anderson, Defendants.

No. 14–12593.
|
Signed May 13, 2015.

**Attorneys and Law Firms**

Philip Berryman, New Haven, MI, pro se.

Charles J. Starling, Alpena, MI, pro se.

Daniel Mora, Freeland, MI, pro se.

Kevin R. Himebaugh, Michigan Department of Attorney General, Lansing, MI, for Defendants.

*MEMORANDUM AND ORDER OVERRULING PLAINTIFF PHILLIP BERRYMAN'S OBJECTIONS (Doc. 37) AND CHARLES STARLING'S OBJECTIONS (Doc. 38) AND ADOPTING REPORT AND RECOMMENDATION (Doc. 35) AND DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER (Doc. 5) AND GRANTING DEFENDANTS' MOTION TO SEVER (Doc. 30)*

AVERN COHN, District Judge.

I.

**\*1** This is a prisoner civil rights case. Plaintiffs Philip Berryman, Charles Starling, and Daniel Mora, prisoners at the Saginaw Correctional Facility (SGF) at the time of their suit,[1] filed this action under 42 U.S.C. § 1983, 1985, and 1988, essentially claiming that defendants, employees of the Michigan Department of Corrections at SCF conspired against them against to violate their civil rights by issuing false and/or retaliatory misconduct tickets and destroying documents. Defendants are: Scott Freed, R. Vittitow, L. Elkins, Exelby, N. Culberson, Kedron, Fay Taylor, Fred Funston, Reszke, Adriane Neff, and Ruhl–Anderson. Plaintiffs claim violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. Plaintiffs seek compensatory damages, punitive damages, and any other relief that the Court deems appropriate.

The matter was referred to a magistrate judge for pretrial proceedings. (Doc. 27) Plaintiffs filed a Motion for a Temporary Restraining Order (TRO) (Doc. 5) and Defendants filed a Motion to Sever (Doc. 30). Plaintiffs filed separate response to Defendants' Motion to Sever. (Docs. 31, 32, and 34.). The magistrate judge issued a report and recommendation (MJRR), recommending that plaintiffs' motion for a TRO be denied because Berryman and Starling have been transferred from the Saginaw Correctional Facility, Starling has been released on parole, and the criteria for a TRO have not been satisfied. The magistrate judge also recommends that defendants' motion to sever be granted because the facts and circumstances of each named plaintiffs' claims are sufficiently distinct such that severance is appropriate. As such, the magistrate judge recommends that Starling and Mora be dismissed without prejudice and Berryman, as the sole plaintiff, be directed to pay the remainder of the filing fee.

Before the Court are Berryman and Starling's objections[2] to the MJRR. Mora has not filed objections and the time of filing objections has past. For the reasons that follow, Berryman and Starling's objections will be overruled, the MJRR will be adopted, the motion for a TRO will be denied, and the motion to sever will be granted.

II.

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. *Id.* The requirement of de novo review

"is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." *United States v. Shami,* 754 F.2d 670, 672 (6th Cir.1985).

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context. *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505, 508 (6th Cir.991) ("It is arguable in this case that Howard's counsel did not file objections at all.... [I]t is hard to see how a district court reading [the 'objections'] would know what Howard thought the magistrate had done wrong.").

III.

**\*2** As an initial matter, neither Berryman nor Starling object to the magistrate judge's recommendation that the motion for a TRO be denied. The Court agrees with the magistrate judge. No further discussion is necessary.

Berryman and Starling object to the recommendation to sever. Their objections essentially repeat the arguments considered and rejected by the magistrate judge. As the magistrate judge carefully explained, while some of the plaintiffs' claims and arguments may be similar and require the testimony of the same witnesses, the factual circumstances are different and the related questions of law are different. Because of this, it is more appropriate to sever Starling and Mora and allow this case to proceed on only Berryman's claims. Starling and Mora are free to file separate cases if they chose.

Berryman also objects to the magistrate judge's recommendation that he pay the remaining portion of the filing fee. Berryman maintains he paid his share of the filing fee and says he need not pay any more. He is mistaken. When the complaint was filed, Berryman paid $116.66, which is slightly more than 1/3 of the $400.00 civil case filing fee. (Doc. 2). However, because the case will go forward with only Berryman as plaintiff, he is now responsible for the entire filing fee.

IV.

Accordingly, for the reasons stated above, Berryman's objections are OVERRULED. Starling's objections are OVERRULED. The MJRR is ADOPTED as the findings and conclusions of the Court. Plaintiffs' motion for a TRO is DENIED. Defendants' motion to sever is GRANTED. Mora and Starling are DISMISSED WITHOUT PREJUDICE.

Berryman shall submit the remainder of the filing fee, $283.34, within thirty (30) days of the date of this order.

SO ORDERED.

**REPORT AND RECOMMENDATION**

MONA K. MAJZOUB, United States Magistrate Judge.

Plaintiffs Philip Berryman, Charles Starling, and Daniel Mora, prisoners at the Saginaw Correctional Facility at the time of their suit, [1] filed this action under 42 U.S.C. §§ 1983, 1985, and 1988 against Defendants Scott Freed, R. Vittitow, L. Elkins, Exelby, N. Culberson, Kedron, Fay Taylor, Fred Funston, Reszke, Adriane Neff, and Ruhl–Anderson alleging that Defendants conspired to retaliate against them in violation of their "right to substantive due process under the Fist and Fourteenth Amendments," their "right to procedural due process rights under the Fourteenth Amendment, their "rights to due process and a fair trial under the Fifth and Sixth Amendments," their "rights to due process and a fair hearing/trial under the First, Fifth and Sixth Amendments," and their "right against continued seizure without probable cause under the Fourth Amendment." (*See* docket no. 1.) Plaintiffs seek compensatory damages, punitive damages, and any other relief that the Court deems appropriate.

Before the Court are Plaintiffs' Motion for a Temporary Restraining Order (docket no. 5) and Defendants' Motion to Sever (docket no. 30). Plaintiffs each filed a response to Defendants' Motion. (Docket nos. 31, 32, and 34.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 27.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I. Recommendation

**\*3** The undersigned recommends denying Plaintiffs' Motion for a TRO (docket no. 5) and granting Defendants' Motion to Sever (docket no. 30). Plaintiffs Charles Starling and Daniel Mora should be dismissed from this matter without prejudice. The Court should also require Plaintiff Philip Berryman to pay the remaining portion of his filing fee. (*See* docket no. 2.)

## II. Report

### A. Factual Background [2]

Plaintiff Berryman alleges that Defendants' retaliatory conduct began in December 2010 while he was housed at the Cotton Correctional Facility. Plaintiff alleges that he filed grievances against a healthcare provider at the prison and that "her Homosexual Partner," Defendant Neff, retaliated by falsely claiming that Plaintiff Berryman had assaulted her, which led to a Misconduct Ticket. Plaintiff alleges that his hearings on the matter were rushed and that he was then transferred to the Lakeland Correctional Facility without having an opportunity to prove his innocence. (Docket no. 1 at 19.) Plaintiff contends that he attempted to get information concerning Defendant Neff's mental stability and that he wrote letters to the Jackson County Prosecutor's Office and the Michigan State Police without any response. (*Id.*)

Plaintiff Berryman further alleges that while he was incarcerated at the Lakeland Correctional Facility, he received 15 false Major Misconduct Tickets from Defendant Elkins and that he was told she "knew about what he had done at the Cotton facility." (*Id.*) At some point, though, non-party Captain Thomas took Plaintiff to see Defendant Elkins and told her to stop writing the tickets, but she said that she was "told to write the tickets, by her supervisor D. Smith." (*Id.*) The tickets from Defendant Elkins stopped, but Plaintiff then started being charged with complaints from D. Smith. (*Id.* at 20.) Plaintiff was ultimately informed by non-party RUM G. Paul that Plaintiff was going to be transferred because of all of his grievances and other complaints. (*Id.*)

On June 11, 2013, Plaintiff Berryman was transferred to the Saginaw Correctional Facility. Plaintiff alleges that at that time, he was given a drug test, "which shown negative for drugs," but he was given a Major Misconduct Ticket for Substance Abuse and Other. (*Id.* at 20–21.) Plaintiff alleges that Defendants Freed and Neff denied him access to documents that would prove his innocence and that they further told him that staff at SRF would not put up with him constantly filing grievances like he did at Lakeland and Cotton. (*Id.* at 21.) He alleges that Defendants then found him guilty of the Major Misconduct, which resulted in a permanent loss of his visiting privileges. (*Id.*)

Plaintiff Berryman alleges that later that night, Defendant Ruhl–Anderson allowed another prisoner to steal his property, so Plaintiff filed a grievance. He claims that Defendant Taylor then refused to order inkjet cartridges for his word processor and stopped a word-processor-repair claim, which Plaintiff had attempted to send to a previously approved vendor. (*Id.*) And he alleges that Defendant Taylor refused to remit a filing fee to federal court for a case in the Western District of Michigan, which resulted in his inability to receive proper Kosher meals. (*Id.* at 22.)

**\*4** Plaintiff Berryman also alleges that Defendant Ruhl–Anderson claimed that she found contraband in Plaintiff's area, which Plaintiff claims were hobbycraft popsicle sticks, but Defendant Culberson still found him guilty of the ticket "because she had to rely on the (other) officers to protect her while she was at work." (*Id.*) Plaintiff claims that Defendant Ruhl–Anderson told him to "file another grievance on me" if Plaintiff believed the ticket was improper. (*Id.*)

Finally, Plaintiff Berryman alleges that on May 5, 2014, Defendant Funston came to his room told him he was "the inspector" and that he was there "to check [Plaintiff's] legal materials at the request of AGA Kummer regarding a lawsuit you have with a prisoner Connor's (sic)." (*Id.* at 23.) Plaintiff alleges that Defendant Funston took his word processor and floppy disks with all of his legal materials on them. (*Id.*)

Plaintiff Starling alleges that Defendants Freed, Ruhl–Anderson, Culberson, Vittitow, and Kedron, along with some other non-party officers, conspired to retaliate against him because he was friends with Plaintiff Berryman. Plaintiff alleges that in April of 2014, he was issued a Major Misconduct ticket and that he was found guilty of the misconduct without a hearing by Defendant Freed, the hearing investigator. Plaintiff Starling alleges

that he attempted to contact Defendants Vittitow, Freed, and Culberson regarding the lack of a hearing but that none of them responded. And when Plaintiff asked non-party Sergeant Cichouski about the lack of a hearing, he said "you'll have to provide it, you like hanging with mister (sic) Berryman and filing grievances so much." (Docket no. 1 at 39.) Then, when he attempted to get a hearing report from the alleged hearing, Defendant Vittitow told him that if he kept asking, he "might find himself way up North." (*Id.* at 40.)

Plaintiff Starling also alleges that Defendants Ruhl–Anderson and Kedron fabricated a false Major Misconduct allegation against him for allegedly giving his telephone PIN to another inmate, which resulted in a 180–day loss of phone privileges. Plaintiff alleges that Defendant Kedron told him "you need to watch who you write grievance on," and non-party officer Randall told him "you're getting into a big mess hanging out with prisoner Berryman, certain staff are going after you because of it." (*Id.* at 40–41.)

Plaintiff Mora alleges that he complained to the Assistant Resident Unit Supervisor in his unit about Defendant Reszke throwing Plaintiff Mora's property on the floor and that in retaliation for doing so, Defendant Reszke charged him with theft and being out of place. Plaintiff Mora further alleges that he tried to get the hearing rules from Defendant Freed, but Defendant Freed refused to provide them. Defendant Culberson then took Plaintiff Mora to a hearing regarding the charges, refused to provide him with an interpreter, and then found Plaintiff Mora guilty. Plaintiff Mora alleges that he could not understand Defendant Culberson at the hearing and that she falsely stated that Plaintiff pled guilty. Plaintiff also notes that Defendant Reszke told him that he "should not be hanging out with Berryman." (Docket no. 1 at 53.)

### B. Governing Law

#### 1. Motion to Sever

**\*5** Under Rule 21, a court "may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21. District courts have broad discretion with regard to severance under Rule 21. *See Deskovic v. City of Peekskill,* 673 F.Supp.2d 154, 159–60 (S.D.N.Y.2009); *United States v. O'Neil,* 709 F.2d 361, 367 (5th Cir.1983). The moving party bears the burden of demonstrating that "severance is required to avoid prejudice or confusion and to promote the ends of justice." *See Bey v. City of N.Y.,* No. 99 Civ. 3873(LMM), 2009 WL 1911742, at \*1 (S.D.N.Y. June 30, 2009) (citing *Lewis v. Triborough Bridge & Tunnel Auth.,* No. 97 Civ. 0607(PKL), 2000 WL 423517, at \*2 (S.D.N.Y. Apr.19, 2000)). Moreover, when considering a Rule 21 motion to sever, courts look to Rule 20 for guidance. *Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality by Any Means Necessary v. Regents of the University of Michigan et. al,* 701 F.3d 466, 489 (6th Cir.2012); *see also In re EMC Corp.,* 677 F.3d 1351, 1356 (Fed.Cir.2012); *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 521 (5th Cir.2010); *Coughlin v. Rogers,* 130 F.3d 1348, 1351 (9th Cir.1997). Under Rule 20(a)(1), joinder of Plaintiffs is proper if "(A) [the plaintiffs] assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed.R.Civ.P. 20(a)(1). Similarly, joinder of Defendants is proper if "(A) any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2). But courts also consider "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *See, e.g., Kehr v. Yamaha Motor Corp.,* 596 F.Supp.2d 821, 826 (S.D.N.Y.2008).

#### 2. Temporary Restraining Order

Federal Rule of Civil Procedure Rule 65 authorizes the issuance of preliminary injunctions and temporary restraining orders. The Court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue. *First Tech. Safety Sys., Inc. v. Depinet,* 11 F.3d 641, 650 (6th Cir.1993). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir.2002) (citation omitted). In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2)

the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues. *Id.* (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id.* See also Gonzales v. Nat'l Bd. of Med. Exam'rs, 225 F.3d 620, 625 (6th Cir.2000).

### C. Analysis

#### 1. Defendants' Motion to Sever

**\*6** Through their Motion to Sever, Defendants argue that Plaintiffs each raise separate claims against divergent groups of defendants, even though there are overlapping defendants and Plaintiffs each allege some sort of retaliation claim. Thus, Defendants contend, Plaintiffs are improperly joined under Rule 20(a)(1), and Defendants are improperly joined under Rule 20(a)(2). (*See* docket no. 30.) Plaintiffs assert, though separate responses, that their claims are not improperly joined because they allege that (1) Defendants acted in concert to retaliate against Plaintiff Berryman for his filing of grievances against Defendants and other non-party officers, and (2) Defendants retaliated against Plaintiffs Starling and Mora because of their friendships with Plaintiff Berryman. (*See* docket nos. 31, 32, and 34.)

Although Plaintiffs' claims are arguably related because of the underlying connection to Plaintiff Berryman, the claims by Plaintiffs Mora and Starling are analytically and factually distinct from those of Plaintiff Berryman. As Defendants correctly note, "Plaintiff Berryman's claims are against Defendants Freed, Exelby, Funston, Taylor, Neff, Ruhl–Anderson, Culberson, and Elkins [for] allegedly [filing] false misconduct tickets, interference with access to the courts, retaliation, conspiracy, and destruction/confiscation of documents;" while Plaintiffs Starling's claims are against "Defendants Freed, Ruhl–Anderson, Culberson, Vittitow and Kedron [for] allegedly [filing a] false misconduct ticket, conspiracy to destroy or deny evidence, and retaliation;" and Plaintiff Mora's claims are "against Defendants Freed, Reszke, and Culberson [for] writ[ing] a retaliatory misconduct ticket ... and [denying him] an interpreter at the hearing." (Docket no. 30 at 5–6.) Moreover, Plaintiff Berryman alleges that Defendants' retaliation is based on his filing of grievances while Plaintiffs Starling and Mora allege that Defendants' retaliation is based on their friendship with Plaintiff

Berryman. Thus, while some of Plaintiffs' claims and arguments may be similar and may require the testimony of related witnesses, the questions of law and fact are not common to all of the Plaintiffs or all of the Defendants. Therefore, the Court should grant Defendants' Motion to sever and dismiss Plaintiffs Starling and Mora from this matter, without prejudice. Additionally, Plaintiff Berryman should be required to pay the remaining filing fee that was originally split between the Plaintiffs.

#### 2. Plaintiffs' Motion for a Temporary Restraining Order

Without any further development of their argument, Plaintiffs generally assert that they will be transferred from SRF in retaliation for their filing of the instant lawsuit, that Defendants "have a practice and custom" of doing so, and that Plaintiffs "will suffer immediate and irreparable harm and lack of adequate remedy at law unless the Defendants ... are prevented from continuing in such conduct and from further retaliation." (Docket no. 5.) Notably, Plaintiffs Berryman and Starling have already been transferred from SFR, and Plaintiff Starling has been released on parole. Thus, Plaintiffs' instant Motion is moot with respect to those individual Plaintiffs. Moreover, Plaintiffs have failed to make any argument with regard to the factors that the Court is to consider with regard to a Motion for TRO. Thus, they have failed to meet their burden in this matter. Plaintiffs' Motion should be denied.

### D. Conclusion

**\*7** For the reasons stated above, the undersigned recommends denying Plaintiffs' Motion for a TRO (docket no. 5) and granting Defendants' Motion to Sever (docket no. 30). Plaintiffs Charles Starling and Daniel Mora should be dismissed from this matter without prejudice. The Court should also require Plaintiff Philip Barryman to pay the remaining portion of his filing fee. (*See* docket no. 2.)

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 5

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection # 1," "Objection # 2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.

Filed April 20, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2250985

Footnotes

1   As the magistrate judge noted, Berryman is currently incarcerated at the Macomb Correctional Facility, Mora remains incarcerated at the Saginaw Correctional Facility, and Starling has been release on parole.

2   The MJRR was issued on April 20, 2015. Objections were due on or before Friday, May 8, 2015. Starling's objections were received for filing on May 11, 2015. However, his certificate of service states they were placed in the mail on May 3. The Court will consider Starling's objections as timely filed.

1   Plaintiff Berryman is currently incarcerated at the Macomb Correctional Facility; Plaintiff Mora remains incarcerated at the Saginaw Correctional Facility; and Plaintiff Starling has been release on parole.

2   Plaintiffs each set forth separate factual allegations in their joint Complaint. (*Compare* docket no. 1 at 19–25, *with* docket no. 1 at 39–42, *and* docket no. 1 at 53.)

---

**End of Document**   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 136239
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

MALIBU MEDIA, LLC., Plaintiff,
v.
JOHN DOES 1–15, Defendants.

No. 12–CV–13667.
|
Jan. 10, 2013.

**Attorneys and Law Firms**

Paul J. Nicoletti, Nicoletti & Associates, PLLC, Bloomfield Hills, MI, for Plaintiff.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DOE 4'S MOTION TO DISMISS/SEVER, QUASH SUBPOENA AND FOR A PROTECTIVE ORDER (DOC. # 5)*

GEORGE CARAM STEEH, District Judge.

### INTRODUCTION

 *1 Before the court is John Doe 4's *pro se* motion for dismissal/severance due to improper joinder and/or to quash the third-party subpoena, or for a protective order.[1] Because the court finds that putative defendants 2–15 have been improperly joined under Fed.R.Civ.P. 20(a) and that discretionary severance is appropriate, John Doe 4's motion to dismiss/sever is granted as to those defendants. Accordingly, the motion to quash is also granted as to those defendants. John Doe 4's motion for a protective order is thus denied as moot.

### BACKGROUND

This case is like scores of similar lawsuits filed across the country by copyright owners alleging that a group of John Doe defendants downloaded their film(s) without authorization using a peer-to-peer file sharing network, here, BitTorrent. A general description of this protocol is found in this court's earlier decision on a motion to quash/sever in *Patrick Collins, Inc. v. John Does 1–23,* E.D. Mich. Case No. 11–cv–15231, Doc. # 8 (issued 3/26/12). *See also Third Degree Films v. Does 1–47,* 2012 WL 4498911 (D.Mass.2012), describing the technology:

> File sharing through the BitTorrent network begins with a single individual, often referred to as a "seed" user or "seeder," who intentionally chooses to share a particular file with a BitTorrent swarm. The original file in this case contains the entire Motion Picture. Once the file has been shared by the seed user, other members of the swarm can download the original file, which creates an exact digital copy on the computers of the downloading users. Each user requesting to download the file becomes a member of the swarm and consequently receives pieces of the original file. Eventually, the entire file is broken into pieces and distributed to various members of the swarm who may then "reassemble" the file by exchanging pieces with one another. Once a piece of the file is downloaded, it is immediately made available for distribution to other users seeking to download the file, subsequently turning each downloader into an uploader. This sequence leads to the "rapid viral sharing" of the file.

*Id.* at *1. The instant case was brought by Malibu Media, LLC, alleging that the 15 John Doe defendants in this case copied and distributed a website containing 16 registered copyrighted pornographic movies.

This court entered an order allowing plaintiff to serve third party subpoenas on defendants' Internet Service Providers ("ISP") prior to a Rule 26(f) conference. Prior to this discovery, plaintiff had no identifying information concerning the Doe defendants aside from their IP addresses, an identifier that is generated by the user's ISP, here, Comcast. As in the above-cited *Patrick Collins* case, plaintiff alleges the 15 Doe defendants in this matter each

used a BitTorrent client software program to transmit and receive film files in violation of federal copyright laws. Plaintiff alleges the 15 John Does are part of the same series of transactions because they were all part of the same "swarm" of peer users sharing the infringing film product files.

**\*2** John Doe # 4 has now filed a motion requesting that the court sever and dismiss the improperly joined defendants in this matter, and/or quash the subpoenas and issue a protective order. The court's discussion and decision on this request follows.

### ANALYSIS

Resolution of the question presented here turns on whether joinder of a group of peer users, all alleged to have shared and downloaded infringing files stemming from the same seeder, is appropriate. John Doe 4's request is supported by the decision of the undersigned in the above-cited *Patrick Collins* case, as well as the similar decision issued by Judge Tarnow in another *Patrick Collins* case, E.D. Mich. Case No. 12–12596, Doc. # 8 (issued 8/28/12).

John Doe # 4 contends that the above-cited decisions fall in line with a national trend of decisional law concluding that joinder in cases like this one is improper. *See, e.g., Patrick Collins, Inc. v. John Does, et al.,* C.D. Cal. Case No. 12–cv–5267–JVS–RNB, ECF No. 21, 11/5/12. In contrast to those decisions, decisions in other district courts, including several in this district, have denied John Doe defendants' requests to sever and/or quash. These decisions have, according to attorney Morgan E. Pietz of Manhattan Beach, CA, made the Eastern District of Michigan a "hotbed for this kind of pornographic copyright reverse class action litigation." *Malibu Media, LLC v. John Does* 1–30, E.D. Mich. Case No. 12–13312, Doc. # 33 (briefing on Putative John Doe X's Motion to Sever at p. 3, citing the Declaration of Morgan E. Pietz at ¶ 31).

Nonetheless, the court again finds that joinder of the John Doe defendants in this matter is improper under Fed.R.Civ.P. 20(a) (2), as it found in the *Patrick Collins* matter. This is for the reasons that the alleged activity involves 15 different putative defendants, who represent only a tiny fraction of the "swarm" involved; several different ISPs; and "hit dates" spanning the period of approximately two months. The court finds these facts weigh heavily against a finding that John Does 1–15 were involved in the same "transaction" or "occurrence" as contemplated by Rule 20(a)(2). The court can discern no kind of definite or discrete relationship among such anonymous computer users sufficient to support an argument that "swarm joinder" is appropriate, and notes that the number of properly joined defendants under this theory would be vastly greater than 15.

However, whether or not joinder is technically appropriate in this case under Rule 20(a)(2), the court also relies on the discretion granted under Fed.R.Civ.P. 20(b) and 21 to sever John Does 2–15 in this action. This is for the reasons that each defendant to this matter will certainly advance different circumstances surrounding the alleged infringement, and significantly different defenses to the claims; also, each defendant will likely be represented by separate counsel or proceed *pro se,* which will present administrative inefficiencies if severance is not ordered.

**\*3** As described in the case of *Pacific Century Int'l, Ltd. v. Does 1–101,* 2011 WL 5117424 at \*3 (N.D.Cal. Oct.27, 2011), condemning joinder of the Does in that case as a "procedural albatross,"

> [t]o provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions —a thoroughly unmanageable and expensive ordeal. Similarly, pro se Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost.

*Id.* While 15 John Does is not 101, the obstacles presented to *pro se* litigants by maintaining this case as a 15–defendant action are numerous. This court further notes that while joinder increases the defendants' burdens and costs, it minimizes the expenses of the party with greater resources, in particular by eliminating a huge percentage of the filing fees payable if each action is required to be filed separately. Finally, the court acknowledges plaintiff's argument in this court and elsewhere concerning judicial

efficiency, but notes that its discretion to coordinate or consolidate matters, either permanently or for particular proceedings under applicable federal and local rules (i.e. Fed.R.Civ.P. 42 and E.D. Mich. L.R. 83), will allow for any efficiencies plaintiff argues the joinder provides.

*CONCLUSION*

For the foregoing reasons, the court hereby **GRANTS IN PART and DENIES IN PART** John Doe 4's motion for dismissal or severance. John Does 2–15 are hereby severed from the action and the claims as to those defendants are dismissed. The previously issued subpoenas are hereby quashed (with the exception of the subpoena to John Doe 1's ISP, as to John Doe 1 only), and plaintiff shall immediately notify the ISP recipients of the subpoenas of this ruling. Further, plaintiff shall immediately transmit the ruling in this case to any of the John Does with which it has had contact based on those subpoenas. This civil action is hereby assigned to John Doe 1 as an individual defendant, and plaintiff may file individual complaints against Doe defendants 2–15. Those complaints will be assigned separate civil action numbers by the clerk of the court upon plaintiff's payment of the associated filing fee. John Doe 4's motion for a protective order is hereby **DENIED AS MOOT.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 136239

Footnotes

1  The court hereby orders the motion submitted for decision without oral argument, as provided in E.D. Mich. LR 7.1(e)(2).

2014 WL 2442634
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee,
Greeneville Division.

WORLDWIDE DIGITAL
ENTERTAINMENT, LLC, et al., Plaintiffs,
v.
WOODSTONE DELI AND
SPORTS GRILL et al., Defendants.

No. 2:13–CV–136.
|
Signed May 30, 2014.

**Attorneys and Law Firms**

Matthew M. Googe, Michael E. Robinson, Robinson IP Law, PLLC, Knoxville, TN, for Plaintiffs.

C. Christopher Raines, Jr, Law Office of C. Christopher Raines, Jr., Mt. Carmel, TN, Kelli L. Thompson, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Katrina Atchley Arbogast, Linda Hamilton Mowles, Lynn C. Peterson, Lewis, Thomason, King, Krieg & Waldrop, P.C., Knoxville, TN, Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, VA, Mark S. Dessauer, Hunter, Smith & Davis, Kingsport, TN, for Defendants.

Todd Dolehanty, Bristol, TN, pro se.

*MEMORANDUM OPINION*

LEON JORDAN, District Judge.

**\*1** This civil action is before the court for consideration of the "Motion to Dismiss or in the Alternative to Sever" filed by defendant, Mellow Mushroom of Johnson City, LLC, [doc. 33]; the "Motion of Numans Café & Sports Bar to Dismiss or Sever Plaintiffs' Complaint Filed Against it Pursuant to Federal Rule of Civil Procedure 21" [doc. 58]; and "Defendant Quality Restaurant Concepts, LLC's Motion to Dismiss and/or Sever" [doc. 60]. The motions have been fully briefed and are ripe for the court's determination. Oral argument is unnecessary. For the reasons that follow, the motions will be granted to the extent that these three defendants seek severance from this action.

I.

*Background*

Plaintiffs filed this civil action against 19 named defendants and 30 John Doe defendants alleging copyright infringement, trademark infringement, and violation of common law. Plaintiff, Worldwide Digital Entertainment, LLC, asserts in the complaint that it holds copyrights for karaoke songs, including the songs allegedly infringed by the defendants. Plaintiff, Piracy Recovery, LLC, asserts in the complaint that it is the owner of the trademark "Chartbuster Karaoke." The named defendants in the complaint include eating and drinking establishments and disc jockeys or "karaoke jockeys" ("KJs"). The complaint includes information concerning how karaoke works and allegations concerning how KJs use karaoke recordings without valid licenses.

II.

*Analysis*

*Legal Standard for Joinder and Misjoinder*

In all three motions before the court, the defendants seek, at least in part, to be severed from this action because they have been improperly joined as defendants. Federal Rule of Civil Procedure 20(a)(2) provides:

> Persons ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

In addition, Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

© 2018 Thomson Reuters. No claim to original U.S. Government Works. 1

"The purpose of [Rule 20(a) ] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974); *see also Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 231 (M.D.Tenn.2001). This purpose is in accord with the underlying principle of the Federal Rules of Civil Procedure to permit "the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

> The rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action.

**\*2** *Mosley,* 497 F.2d at 1333.

The common question test "does not require that all questions of law and fact raised by the dispute be common. Yet, neither does it establish any qualitative or quantitative test of commonality." *Id.* at 1334. This test is usually easy to satisfy. *Bridgeport Music,* 202 F.R.D. at 231 (citing 4 James Wm. Moore *et al., Moore's Federal Practice* ¶ 20.04 (3d ed.1999)).

The transactional test is "more forbidding" and "requires that, to be joined, parties must assert rights, or have rights asserted against them, that arise from related activities —a transaction or an occurrence or a series thereof." *Id.* (citations omitted). The test is not easily applied and "generally requires a case by case analysis." *Id.* at 232. Whether to allow permissive joinder is within the sound discretion of the district court. *State of Ohio ex rel. Fisher v. Louis Trauth Dairy,* 856 F.Supp. 1229, 1239 (S.D.Ohio 1994) (citing *Swanigan v. Amadeo Rossi, S.A.,* 617 F.Supp. 66, 67 (E.D.Mich.1985)).

*Motion of Numans Café & Sports Bar*

Numans's motion to dismiss or sever is brought pursuant to Fed.R.Civ.P. 21. Numans argues that it has been improperly joined as a defendant because there is no connection between "the activity, date, time, place or music" it allegedly improperly used and the activity of any of the other defendants. Numans further asserts that plaintiff makes only broad allegations and offers generalized concepts of transactions and occurrences as they contend that "at least some of the Defendants swapped Plaintiffs' copyrighted works ... with one another ..." and that "at least some of the Defendant venues engaged services of some of the Defendant KJs ...." According to its answer, Numans purchased karaoke discs and one of its employees serves as the KJ. Exhibit A reflects that Numans used an in-house KJ on the date of the alleged infringement activity. Numans points out that plaintiffs allege that it infringed just one song, at one time and date, on one registration. Thus Numans concludes that there is no relationship or connection between the defendants and no concerted action or business involvement between the defendants, and thus no "series of transactions or occurrences by the various defendants in this case" support joinder. In support of its arguments, Numans relies on *The Bicycle Peddler, LLC v. Does 1– 81,* No. 3:13–CV–79, 2013 WL 3975593 (E.D.Tenn. July 31, 2013) in which the magistrate judge found, and the district judge confirmed, that joinder of the defendants was improper because the alleged infringements were a series of discrete transactions that could not be considered a single transaction, occurrence, or series of occurrences. The case involved alleged downloads of a motion picture that took place at different times, dates, and over a span of two months involving what is referred to as BitTorrent copyright infringement. Numans also relies on *Slep–Tone Entertainment Corp. v. Mainville,* No. 3:11–cv–00122, 2011 WL 4713230 (W.D.N.C. Oct.6, 2011); *Slep–Tone Entertainment Corp. v. Ellis Island Casino & Brewery,* No. 2:12–CV–00239–KJD–NJK, 2013 WL 530905 (D.Nev. Feb.11, 2013); and *Slep–Tone Entertainment Corp. v. Roberto,* No. 12–cv–5750, 2013 WL 5748896 (N.D.Ill. Oct.22, 2013). These three cases specifically involve alleged infringement of karaoke trademarks by multiple defendants, and resulted in the moving defendants being severed.

**\*3** Plaintiffs argue that the facts alleged are sufficient to show that their claims arise out of the same series of transactions or occurrences. They assert, as noted above, that some of the defendants swapped their copyrighted

works and that some of the defendants engaged the services of the defendant KJs. Plaintiffs contend that the defendants are a small group of Karaoke venues and KJs in the Tri–Cities area. Plaintiffs further argue that this case is distinguishable from *The Bicycle Peddler* and *Roberto.*

The court agrees with Numans that plaintiffs have not alleged sufficient facts to support the joinder of this defendant with all the others. Plaintiffs' averments that some of the defendants swapped copyrighted works and some of the defendant venues engaged defendant KJs are merely vague assertions and unsupported conclusions that do not link all of the defendants. Exhibit A to the complaint, which is a chart containing information regarding the alleged infringement of plaintiffs' copyrights and trademarks by defendants, does not support plaintiffs' contention that the defendants are connected because it identifies what is a series of discreet transactions involving different defendants, different dates and different alleged infringements of copyrighted songs.

With regard to Numans, Exhibit A asserts that on September 30, 2012, an in-house KJ allegedly played a Garth Brooks song copyrighted by plaintiffs. Numans is not connected to one of the defendant KJs or with any of the other listed defendants, dates or copyrighted songs. While some of the listed copyright registration numbers on Exhibit A are the same, that alone is insufficient to link the defendants to the other alleged violations that occurred on different dates at different venues. The alleged infringements by Numans and the other defendants are discrete transactions that do not comprise the same transaction or occurrence or series of transactions of occurrences.

> Obviously, the infringement of any trademark, copyright, or patent originates from a common ultimate source, that being the trademark, copyright, or patent itself. Here, Defendants may have committed the same type of violation in the same way, but, again, that does not link defendants together for purposes of joinder. There is no allegation that the twenty-three Defendants sued here acted in concert. Although each Defendant allegedly infringed upon the same trademark, each Defendant allegedly did so separately, in time and place, from the other Defendants with no knowledge that the other Defendants were also engaged in any alleged infringement of their own.... Of particular concern to the Court is the lack of any connection between the claims against the various Defendants. It appears that theses cases are really separate lawsuits combined together for no apparent reason except to avoid paying filing fees.

*Mainville,* 2011 WL 4713230, at *4–5 (internal quotation marks and citation omitted); *see also The Bicycle Peddler,* 2013 WL 3975593 (in BitTorrent infringement case alleged downloads contained in exhibit to complaint occurred over two month span at different dates and times which court found to be discrete transactions that could not be single transaction, occurrence, or series of transactions or occurrences.); *Bridgeport Music,* 202 F.R.D. 229 (in copyright infringement case court found songs and activities leading to production and distribution of songs not series of transactions or occurrences—each song represented discreet occurrence.). Again, plaintiffs' non-specific assertions regarding "some" of the defendants swapping copyrighted songs and engaging the services of defendant KJs are insufficient to link the defendants or to demonstrate that the defendants engaged in the same transaction or occurrence or series of transactions of occurrences. Accordingly, Numans's motion to sever is well taken and will be granted.

*Motion of Quality Restaurant Concepts, LLC*

**\*4** Quality Restaurant Concepts, LLC ("QRC") has moved pursuant to Rule 21 to be dismissed or severed from this case. QRC argues that the only paragraph in the complaint that specifically addresses QRC is paragraph 15, in which plaintiffs assert that QRC operates two Applebee's restaurants, one in Bristol, Tennessee and one in Elizabethton, Tennessee.[1] The other reference to QRC is in Exhibit A to the complaint. In Exhibit A, plaintiffs represent that on October 11, 2012, Night Train Karaoke played "He Stopped Loving Her Today" by George Jones at the Elizabethton Applebee's. QRC points out that the song, date and time, and KJ are not the same as any of

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 3

the other alleged infringements attributable to the other defendants. QRC argues that plaintiffs cannot meet the transactional test because every alleged infringement is unrelated to any of the other alleged infringements. Thus, QRC maintains that the defendants were not involved in the same transaction or occurrence. In support of its position, QRC also relies in part on *The Bicycle Peddler*.

Plaintiffs argue *inter alia* that the allegations in the complaint meet the transactional test because "at least some of the Defendants swapped Plaintiffs' copyrighted works (in the form of CDGs) with one another." Plaintiffs also assert that some defendants engaged the services of some of the KJ defendants. On Exhibit A, it is alleged that QRC engaged defendant Bob Eaton d/b/a Night Train Karaoke on October 11, 2012. Plaintiffs also argue that *The Bicycle Peddler* is distinguishable because the case involved BitTorrent infringement and a larger number of defendants.

For the same reasons discussed above, the court finds that QRC's motion is also well taken. Even though according to Exhibit A QRC allegedly engaged defendant Night Train Karaoke on a specific date, that fact alone is not sufficient to alter the court's analysis. While that circumstance may connect QRC with one other defendant, it does not connect the claims against QRC with all the other defendants to justify joinder. Further, while *The Bicycle Peddler* involved BitTorrent infringement, that fact is not a significant enough distinction to make that court's analysis and findings inapplicable to this case. Therefore, QRC's motion for severance will also be granted.

*Motion of Mellow Mushroom of Johnson City, LLC*

Mellow Mushroom of Johnson City, LLC ("Mellow Mushroom") has moved under Fed.R.Civ.P. 12(b)(6) for dismissal of the claims asserted against it and alternatively under Rule 21 to be severed from the other defendants. The Mellow Mushroom contends that it too has been improperly joined as a defendant in this case. It argues that the plaintiffs have not identified any common transaction at issue between the various defendants, as it is clear that different karaoke songs were played by various KJs at different venues on different dates. Thus, each occurrence would involve facts and discovery unrelated to the other alleged incidents of infringement. The Mellow Mushroom argues therefore that the defendants should not have to endure discovery unrelated to them because plaintiffs want the convenience of one case.

**\*5** Plaintiffs make the same arguments enumerated above regarding the alleged swapping of songs by some of the defendants and that some of the defendant KJs performed at various defendants' venues. Plaintiff also argues that the number of remaining defendants does not make joinder impracticable.

Again, applying the above analysis to the Mellow Mushroom's motion, the court reaches the same conclusion. Plaintiffs have not connected this defendant to any other defendant other than Paradise Productions (Mike Butler), a defendant KJ, who is alleged to have performed a copyrighted work on October 18, 2012. This does not link the Mellow Mushroom to the other defendants. Like the circumstance with Numans and QRC, this is a distinct event that plaintiffs have not shown to be connected with the alleged infringements by the other defendants.

In addition, plaintiffs' contention that the number of remaining defendants does not make joinder impracticable is unavailing. Plaintiffs set out with their complaint to sue and join together in one lawsuit 49 defendants. The fact that some of those defendants are no longer in the suit is of no real significance. The various defendants that remain will all have different factual situations and proof to present at trial, and the risk of mini-trials remains substantial.

Further, in light of the court's finding that the Mellow Mushroom should be severed from this case, the court does not need to reach the Mellow Mushroom's motion to dismiss under Rule 12(b)(6). That motion will be denied with leave to renew.

III.

*Conclusion*

For the reasons discussed above, defendants Numans Café, the Mellow Mushroom, and Quality Restaurants Concepts will be severed from this action. Should plaintiffs wish to pursue their claims against these defendants, they will be required to file a separate action

as to each defendant and pay a separate filing fee.[2] The remaining claims and defendants will not be severed at this time. The court will, however, entertain motions to sever from the remaining defendants. An order consistent with this opinion will be entered.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2442634

Footnotes

1  The complaint contains 109 numbered paragraphs.
2  Plaintiffs saved over $19,000 in filing fees by filing one case against 49 defendants: 49 x $400.00 = $19,600.00.

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Order Clarified on Reconsideration by Slep-Tone Entertainment Corp. v. Garner, W.D.N.C., December 20, 2011

2011 WL 4713230
Only the Westlaw citation is currently available.
United States District Court, W.D. North Carolina, Charlotte Division.

SLEP–TONE ENTERTAINMENT CORPORATION, Plaintiff,
v.
Robert MAINVILLE, et al., Defendants.

No. 3:11–cv–00122.
|
Oct. 6, 2011.

**Attorneys and Law Firms**

James M. Harrington, Harrington Law, P.C., Concord, NC, for Plaintiff.

Nona Powers, Cary, NC, pro se.

Stephen Winn, Raleigh, NC, pro se.

Daniel T. Blue, III, Dhamian A. Blue, Blue Stephens & Fellers LLP, Jonathan Wellons Anderson, Stuart Law Firm, PLLC, Raleigh, NC, for Defendants.

## ORDER

GRAHAM MULLEN, District Judge.

 *1 THE MATTER comes now before the Court upon Defendant Collin Yarbrough's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.I. 20, 21], Defendant Nona Powers' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [D.I. 24], Defendant Steven Penny's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.I. 25], and upon the Court's request, made at the August 25, 2011 hearing on the Motions to Dismiss, that the parties brief the issue of whether joinder of the large group of Defendants is proper.

## I. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. See *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir.2009). When deciding a 12(b)(6) motion to dismiss, a court must "accept as true all factual allegations" presented in the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 589 (2007). In order to survive a 12(b)(6) motion to dismiss the plaintiff's complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." *Twombly,* 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, if a complaint establishes a sufficient legal and factual basis for the claims asserted the motion to dismiss will be denied.

## II. FACTUAL BACKGROUND

Plaintiff Slep–Tone Entertainment Corporation ("Slep–Tone") is a manufacturer and distributor of karaoke accompaniment tracks sold under the name "Sound Choice." (Compl. at 2). Slep–Tone has its principal place of business in Charlotte, North Carolina. (Compl.¶ 5). Defendant Nona Powers is an individual, engaged in the business of providing karaoke entertainment, who does business as "Cat and Bone Karaoke" and who has her principal business address in Cary, North Carolina. (Compl.¶ 14). Defendant Collin Yarbrough is an individual, engaged in the business of providing karaoke entertainment, who does business as "DJ Collin Y" and who has his principal business address in Raleigh, North Carolina. (Compl.¶ 25). Defendant Steven Penny is an individual, engaged in the business of providing karaoke entertainment, who does business as "Southeastern Entertainment" and who has his principal business address in Raleigh, North Carolina. (Compl.¶ 27).

Slep–Tone is the owner of two trademarks registered with the U.S. Trademark office relating to the name "Sound Choice" and to a specific display of the name.[1] (Compl.¶¶ 53, 54). Plaintiff has, for the entire time the Marks have been registered, provided the public with notice of its

federal registrations through the consistent display of the ® symbol with its Marks. (Compl.¶ 55).

 *2  Slep–Tone was founded by two brothers 25 years ago and became a leading producer of karaoke backing music. (Compl. at 2). Plaintiff states that it invested more than $18 million to re-record and replicate the authentic sound of popular music across different eras and genres of music. *Id.* A karaoke jockey ("KJ") plays karaoke songs using compact discs written in a special encoded formats known as compact disc plus graphics ("CD🔑G") or MP3 plus graphics ("MP3G"). *Id.* Karaoke CD🔑G and MP3G recordings contain music and accompanying lyrics which display on a screen to aid the performer. (Compl.¶¶ 29–31). Graphics data is also used to mark the accompaniment tracks with Plaintiff's trademarks and to cause the trademarks to be displayed upon playback. (Compl.¶ 32).

KJs purchase equipment, purchase or license compact discs containing accompaniment tracks, and charge for karaoke services. (Compl.¶ 35). Plaintiff states that some KJs obtain, copy, share, distribute and/or sell media-shifted copies of the accompaniment tracks via pre-loaded hard drives, USB drives, CD–R's, or the Internet. (Compl.¶ 36). Slep–Tone does not authorize the digitization of its songs for commercial use in producing karaoke shows, but SlepTone claims that it tolerates the shifting of its accompaniment tracks from the original medium to another medium provided that the KJ follows Slep–Tone's media-shifting policy by maintaining "one-to-one correspondence." (Compl.¶ 37–39).

Plaintiff states that technological advances made possible widespread illegal copying and distribution of its karaoke discs among KJs. (Compl. at 2–3). Furthermore, Plaintiff claims that these practices injure its business and pressure legitimate KJs to turn to piracy to stay in business. (Compl. at 3–4).

Slep–Tone alleges that defendant Nona Powers was observed operating a karaoke system to produce a karaoke show in this State and that, in connection with the show and with defendant's weekly karaoke shows, defendant Powers repeatedly displayed the Sound Choice Marks without right or license. (Compl.¶¶ 78–80).

Slep–Tone also alleges that defendant Collin Yarbrough was observed operating a karaoke system to produce a karaoke show in this State where defendant Yarbrough used counterfeit goods bearing the Sound Choice Marks and repeatedly displayed the Sound Choice Marks without right or license. (Compl.¶¶ 117, 118). Plaintiff alleges that defendant Yarbrough has advertised or otherwise indicated that he possesses a library containing more than 14,000 tracks stored on his karaoke system. (Compl.¶ 119).

Finally, Slep–Tone alleges that defendant Steven Penny was observed operating a karaoke system to produce a karaoke show at a venue in this State where defendant Penny used counterfeit goods bearing the Sound Choice Marks and repeatedly displayed the Sound Choice marks without right or license. (Compl.¶¶ 123, 124). Plaintiff further alleges that defendant Penny possesses a library containing more than 12,700 tracks stored on the karaoke system used to produce the aforementioned show and that defendant Penny uses at least four karaoke systems to produce karaoke shows at venues and private events in this State. (Compl.¶¶ 125, 126).

### III. ANALYSIS

#### A. Motions to Dismiss

 *3  Defendants Yarbrough, Powers, and Penny challenge the sufficiency of Plaintiff SlepTone's pleading for trademark infringement and unfair competition. Under federal law, a plaintiff alleging a cause of action under the Lanham Act for unfair competition and trademark infringement must set forth: (1) that plaintiff possesses a mark; (2) that defendant used the mark; (3) that defendant's use of the mark occurred "in commerce;" (4) that defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" or goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers. *People for Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001) (citing 15 U.S.C. §§ 114, 1125(a)). Under North Carolina law, a plaintiff alleging a cause of action for unfair competition, in both common and statutory form under N.C. Gen.Stat. § 75–1.1, is subject to an analysis similar to the federal law in the context of trademarks and tradenames. *See Yellowbrix, Inc. v. Yellowbrick Solutions, Inc.,* 181 F.Supp.2d 575, 583 (E.D.N.C.2001) (denying preliminary injunction under N.C. Gen.Stat. § 75–1.1 and under North Carolina common law for the same reasons

injunction denied under 15 U.S.C. § 1125(a)). *See also Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) ("The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."); *Universal Furniture Int'l v. Collezione Europa USA, Inc.,* 2007 WL 2712926, at *15 (M.D.N.C. Sept. 14, 2007) (equating the federal and state statutory analyses because the state statute "prohibits the same type of activity that the Lanham Act prohibits"). Here, Plaintiff's Complaint, when reviewed in conjunction with investigative reports filed under seal by Plaintiff [D.I. 33], satisfies the *Twombly* and *Iqbal* standards.

Plaintiff's Complaint does plead facts sufficient to "raise a right to relief above the speculative level" and demonstrates that the claim is "plausible on its face." *Twombly,* 550 U.S. 544, 570. The claim is plausible because the factual content of the Complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal,* 129 S.Ct. 1937, 1949 (2009). The Complaint, when reviewed with the investigative reports, establishes a sufficient legal and factual basis to preclude dismissal of the claims asserted against each remaining Defendant.

### B. Joinder

Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." To remedy improperly joined parties, the court should not dismiss the action outright, but "the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21. The court may act upon motion by a party or *sua sponte. Id.*

***4** The Supreme Court found that Courts generally should entertain "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724. Joinder, however, is not a "substantive right" of the plaintiff. *Saval v. BL, Ltd.,* 710 F.2d 1027, 1030 (4th Cir.1983). Rather, "[j]oinder is usually thought of as a procedural device by which parties with similar substantive claims might jointly enforce them." *Id.*

The "transaction or occurrence" test of Rule 20 is generally analyzed on a "case by case basis." *Id.* at 1031; *See Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974). The test, if satisfied, "permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Saval* at 1031. Rule 20 "should be construed ... to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.* However, "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records, LLC v. Does 1–38,* 2008 WL 544992 at *2 (E.D.N.C. Feb. 27, 2008).

Here, Defendant Yarbrough argues that Plaintiffs failed to show that either Defendants' actions or Defendants' instrumentality are related. [D.I. 36]. The Court agrees. Plaintiff argues that Defendants' are properly joined because Plaintiff's investigation leads it to believe that Defendants obtained at least some portion of their infringing materials from the same person. However, Plaintiff failed to divulge, in its Complaint or under seal, any information regarding the alleged common source. The alleged source is not named in Plaintiff's Complaint and the alleged source is not identified in any of the underlying investigative materials submitted by Plaintiff to the Court. Furthermore, Plaintiff made no allegation that the Defendants acted in concert in violating the trademarks at issue. Here, as in *Saval,* where the Court found that Plaintiffs improperly joined a group of Defendants who sold allegedly defective automobiles, "the defects were similar, but there the commonality ended." 710 F.2d at 1032. Sleptone alleged that Defendants engaged in similar acts but those similar yet separately occurring acts, purportedly committed by different Defendants at different times and places, are the entire extent of the commonality.[2] Thus, joinder of the Defendants in this action is improper.

Plaintiff urges this Court to adopt the position taken by the Eastern District of Texas in *MyMail, Ltd. v. America Online, Inc.,* 223 F.R.D. 455 (E.D.Tex.2004). There, the *MyMail* Court focused its joinder inquiry on a determination of whether there is a "nucleus of operative facts or law" common to the defendants. *Id.* at 456–457. In support of its request, Plaintiff argues

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works. 3

that the Defendants' actions are logically related because they are predicated, without exception, upon the existence of an unbroken chain of infringement originating from a common ultimate source. The Court disagrees with this logic. Obviously, the infringement of any trademark, copyright, or patent originates from a common ultimate source, that being the trademark, copyright, or patent itself. Here, Defendants may have committed the "same type of violation in the same way," but, again, that "does not link defendants together for purposes of joinder." *LaFace,* 2008 WL 54492 at *2. There is no allegation that the twenty-three Defendants sued here acted in concert. Although each Defendant allegedly infringed upon the same trademark, each Defendant allegedly did so separately, in time and place, from the other Defendants with no knowledge that the other Defendants were also engaged in any alleged infringement of their own. Thus, this Court declines to follow *Mymail,* in this instance, and finds that joinder is improper.

**\*5** Of particular concern to the Court is the lack of any connection between the claims against the various Defendants. It appears that theses cases are really separate lawsuits combined together for no apparent reason except to avoid paying filing fees. Since there appears to be no legitimate basis for joining the Defendants together in these cases, the Court finds that the claims against all but the first-named Defendant, Keith Garner, should be SEVERED from this action upon Plaintiff's filing of new, separate actions against each of the remaining severed Defendants within (20) days and paying the requisite filing fees. In so finding, the Court notes that the potential prejudice to the individual defendants if their cases were to be tried together, given that the proof against each of them is separate and unique, is patently obvious. [3]

### III. CONCLUSION

For the reasons set out herein, the Motions to Dismiss are DENIED. Plaintiff's claims against all Defendants except Keith Garner, are SEVERED from this action. Plaintiff shall file new, separate actions against each of the remaining severed Defendants within thirty (30) days and pay the requisite filing fees. Any such actions should be filed in the venue where the Defendant resides. Failure to comply with the filing requirements of this Order will result in the dismissal, with prejudice, of those claims not pursued against particular Defendants. Plaintiff shall report back to the Court regarding the status of its compliance with the filing requirements set forth herein.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4713230

Footnotes

1. Slep Tone is the owner of U.S. Trademark Registration Nos. 1,923,448 and 2,000,725. (Compl.¶¶ 53, 54).
2. Also, in *Laface Records, LLC v. Does 1–38,* 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), before choosing to sever the action because defendants' merely used the same ISP and P2P networks to allegedly commit copyright infringement, the Court stated at *3 that "[i]n similar cases, other courts have commonly held that where there is no assertion that multiple defendants have acted in concert, joinder is improper." *See BMG Music v. Does 1–4,* No. 3:06–cv–01579–MHP, 2006 U.S. Dist. LEXIS 53237, at *5–6 (N.D.Cal. July 31, 2006) (*sua sponte* severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement); *Interscope Records v. Does 1–25,* No. 6:04–cv–197–Orl–22DAB, 2004 U.S. Dist. LEXIS 27782, ay *19 (M.D.Fla. Apr. 1, 2004) (magistrate judge recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement).
3. The Court also notes that the failure to file these cases as separate lawsuits when they are in fact separate lawsuits causes the filing statistics in this district to be inaccurate. Such statistical data is extremely important as it determines the resources that are necessarily allotted to this district. Thus, the misfiling of these cases could result in less resource being allocated to the district than it is entitled to which, of course, could have negative consequences.